Mr. Babb Thank you, Your Honors. May it please the Court, my name is Jay Babb. I represent the District Court. We're here today on an appeal of a grant of summary judgment where we believe the District Court erred in granting summary judgment on saying that the appellant failed to establish a prima facie case. And in fact, it's a little more narrow than that because of the four elements of the prima facie case. The only one in dispute here would be whether she was meeting the legitimate expectations of her employer at the time of termination. That's the sole issue that the District Court based its order on and went no further. Your Honor, Your Honors, the prima facie case element of legitimate expectations or really just establishing a prima facie case under this Court's case law is not a burdensome task. That's not to say that it isn't a burden on the plaintiff, but it's certainly not a of evidence establishing that Ms. McZeek was performing as to the legitimate expectations to the extent the expectations alleged by defendant were legitimate or honestly held. Ms. McZeek had almost 28 year history with Horry County. 26 of those years were with Judge McDowell who said in his testimony that she was an excellent employee, that she did not have performance problems. How long did she work for Judge McDowell? Approximately 26 years. There was a three-year period, Your Honor, where she was there as a kind of work study. She was gone for approximately four years, I think from 80 to 84. And then she came back and Judge McDowell retired around June 30, 2007, at which point her and one other clerk ran the Loris Magistrate's Office, which was the Magistrate's Office she was based out of in Horry County. Now that's over around Myrtle Beach, right? That's correct, Your Honor, it is. And the other clerk actually became ill, had to take medical leave and ultimately had to retire, leaving Ms. McZeek by herself for a period of time of maybe a couple months running the office. Now certainly there were other judges that may come in, Judge Butler, who's at the detention center, would come in periodically to take care of matters that needed to be taken care of, but there wasn't a resident judge there. No performance problems noted during that time period. Are you contending that Judge Harris's desire or insistence that information with respect to warrants be kept confidential was something other than legitimate? I mean, my problem here is that so much of the whole thing seems to be centered on Judge McDowell, but Judge Harris is the boss. And he had a requirement based upon his prior experience that information with respect to warrants be maintained in a confidential way. Now, is that not a legitimate expectation? In analyzing legitimacy of the expectation, Your Honor, we have to look, in analyzing the legitimacy of the expectations, we have to look at what were the expectations that she was operating under. If there is someone that comes in that may want to change those expectations, because the record shows that Judge McDowell, when asked about disclosure warrants, said once this information is put into the system, the clerks can talk about the warrant. What's the law in South Carolina on whether a warrant that's been issued is a public record? Your Honor, that was never really clarified in the litigation. Well, is a warrant issued by a magistrate judge automatically sealed, or is it only sealed if he orders it to be sealed, or is it immediately a public record? Your Honor, my understanding is that... That ought to be a uniform standard of that, I would think, throughout the state. Your Honor, and I wish I had a direct answer for you on that issue. I don't, what I can cite to is that Judge McDowell, his testimony as to... No, he said it's not, it's a matter of, it's a public record, but he said it's public. Once it's issued, it's public. Yes, Your Honor. And Judge Harris says it's not, it's confidential. The warrant issued is confidential, so you got, they're going both ways. I would think that'd be governed by state law. Well, Your Honor, even if it's governed by state law, it's not... And in the federal system, he gives you a warrant, the judge can seal it pending apprehension of the, or execution of the warrant, but he has to issue, but he has to issue an order, I think, sealing it up. And Your Honor, there was no sealed warrant, or order of confidentiality specific to the warrants at issue. It's, it's this overarching... But why would it be illegitimate for a judge in the role of his employer to want information with respect to arrest and search warrants kept confidential? Your Honor, if... Why wouldn't that be a legitimate fact? Sure, Your Honor. Let me answer that for you, from our perspective. If that was his decision, and as my client in her own testimony said, if that's what he wanted, and he sat us down and said, these are my expectations, he never did that. There's nothing but confusion surrounding this, and the only thing my client can go on is the 25 years, 26 years approximately, of experience under Judge McDowell and his expectations, because those expectations were never properly conveyed, which is part of this analysis. Couldn't, but wasn't McZeek suspended? Didn't some of this come up after failing to heed a written warning? After that, wasn't, wasn't she on notice at that point? We, we disagree, Your Honor, that she was on notice about that, but yes, there was. This case involves two incidents that happened in a short time frame, one right after Judge Harris really started in the office. He came in in July, but he had to go through training for approximately two months until about the August time period, so the first was in September of 2008. At that time, she's called into the office by Judge Whitley and Judge Harris, Judge Whitley being the chief magistrate judge at the time. Now, was he stationed at Loris? He was not stationed at Loris. And where was Judge Harris stationed? Judge Harris was stationed at Loris. He was stationed at Loris, and where was Whitney, like at Myrtle Beach or something? He was at the central court. They centralized their traffic court and their jury court, and had the magistrates dealing with the other issues locally, and he was the chief magistrate over the other magistrates. And Judge Livingston, who's also been identified here, was the associate chief magistrate. My concern about your case is very simple, and that is, I can see why a judge would want information as to warrants kept confidential. Different reasons perhaps with an arrest warrant and a search warrant. An arrest warrant, you have two concerns. Number one, that you will endanger a confidential informant. And number two, that the subject of an arrest warrant may flee. With the search warrant, you have a bit of a, you have an equal concern, but it's a different concern, which is that evidence will be destroyed. But with each of these warrants, arrest and search, you have legitimate concerns about flight, endangering informant, destruction of evidence. So, you know, given the fact that the expectations have to be legitimate, I don't understand why those wouldn't be entirely legitimate. And then the question comes down to, well, were they communicated? And as Judge Duncan points out, you can't get a more direct way of communicating to somebody than giving them a two-day suspension and saying that the sanction for a future violation will be termination. I mean, as the district judge found, Judge Harlow found, that's really laying it on the table. He was anxious to get rid of it. He didn't have to do that. He didn't have to do that. He just wanted to say, look, this is my policy. And what else would the district judge do? It was laid out. Your Honor, I'm sorry, I don't want to interrupt. Go ahead. Okay, thank you, Your Honor. Well, it's important to know the facts of that suspension and analyze those as to what she would have known at the time and what was going on. Part of that is that she's approached about this Don Herring individual by a police officer. He says, tell Don Herring that I have a warrant for him and that, you know, to give him a call when he gets here and I need to meet with him. Well, Don Herring comes in and at the end of the day, she tells him, as a police officer told her to do, that there was a bench warrant for him. He says, I'm a lawyer. You already cleared that up. She says, well, apparently not. You need to go down to the solicitor's office and deal with it. I completely appreciate what you're saying about that incident. The incident that concerns me is the one that happened later when McZeek informed a friend that an arrest warrant had issued against the friend's son. And in that instance, the two concerns that Judge Wilkinson alluded to both occurred. The individual evaded arrest for a lengthy period of time and contacted the confidential informant. The very two things that keeping the warrant confidential would have prevented. So I understand what you're saying about the first instance and the discussions after that. But the second, I find it difficult to rationalize even absent notice of its unacceptability. Your Honor, that warrant had already been attempted service at the mother's house. They searched the home. They were out looking for this guy. So to say that, I think it's difficult to try to say that Ms. McZeek, after getting a phone call from a member of the public, which is part of her duty as a clerk, is to field these phone calls and interact with them. But the purpose of the phone call was to find out the nature of, in circumstances of the arrest. And that was the first time, as I read it, that the friend understood that the warrant involved drug charges. And I also, wasn't that also the instance in which she tried to negotiate with the sheriff's office? Or was that the first? It is the second. She went to... Is that a part of her responsibilities as well? That's not part of her responsibilities. But as both Judge Livingston and Magistrate Judge McDowell testified to, it's not uncommon. And they don't find it appropriate if an employee or a member of the public come, because they have to make a determination on what's the flight risk, what's their character in the community, how do we determine if we issue a PR bond or give a reduced bond. And they welcome that input. And they also testified to, it may matter and it may not matter to the hill of beans, because ultimately the decision will be up to that judge. And they take this input in, process it, and we'll make a decision. Again, getting back to this question of notice, reading the suspension, it says that what she finds wanting are the interactions with Mr. Herring, her friend, quote, by divulging or misusing confidential information. And then in the further section of the report, the judge specifies, McZeek divulged information on a general session bench warrant to the defendant. And then Judge Harris says, consequences should such an incident occur again, the judge would be termination. And right after that, or shortly after that, it did occur to them. It did occur again. And I don't know how you can run an office, I just don't know how you can run an office if you have legitimate expectations that warrants be confidential. And Judge King's question indicates there are reasons to keep this information confidential, which is why these warrants are often sealed. And I don't know how you can run an office when you have a policy. The policy is legitimate. It's meant to protect informants and it's meant to protect the public. And you communicate the policy through a suspension with the reasons for which are spelled out, not verbally, but in writing. And then there's an infraction the very next, shortly thereafter. I mean, I don't know how a judge can run an office if the administrative assistant or a clerk is disregarded in that way. I just don't know how the federal courts would operate if a district judge or a magistrate judge gave information to a clerk and said, these are our policies. Then gave the clerk a suspension. Then there was a violation. It would completely undermine the judge's position in the office for a judge to say the consequences of termination and then not to terminate it or to terminate the individual and then have a court countermand the judge. I don't know how any of us could run an office under those conditions. May I respond, Your Honor, even though I'm out of time? Sure. Thank you. Your Honor, if, and I understand where you're coming from with that, and if these expectations were properly conveyed to Ms. McZeek at the time, we may have a different case here, a different story totally. But they weren't. This was an incident that occurred before Judge Harris got there, thus under the prior expectations of Judge McDowell. They also contend, while saying that you shouldn't have talked about it, you didn't follow the officer's orders. Well, which one is it? Did you, it's okay to disclose it, but you didn't follow the officer's orders? Or you conveyed the information? Because you can't have it both ways. You can't say you can't talk about it, but you didn't follow the officer's orders. Who told him to do it? Disciplinary order seemed very clear to me. If it had been an oral conversation or if there had been an absence of clarity or if there had been no sanction or whatever, but all those things were present. At any rate, you have some rebuttal time. Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honor. It's Mark Byke III. I'm with the law firm of Wilcox, Byke & Williams in Florence, South Carolina, and I represent the defendant, O'Ree County. Your Honor, this was a summary judgment motion that brings us here, and I keep going to Joint Appendix 28, which is the written warning, that suspension notice that Ms. McZeek received in September 2008, and it clearly, the type of the violation clearly set out divulging or misusing confidential information, and then under the supervisor's statement, Judge Harris said Ms. McZeek divulged information on a general sessions bench warrant to the defendant. Judge Harris was very, I mean, protective of his officers serving these warrants, but he had been for 23 years prior to being elected as the magistrate in Loras County, he had, excuse me, in the town of Loras, he had been an agent for the South Carolina Pardon, Probation, and Parole Board, and his testimony was that he had literally served hundreds of warrants, and he was very particular about how those warrants are served. Now, whether there may be a dispute as to what was discussed orally prior to September 25, 2008, it was clear when he issued this particular warning what his expectations were as far as maintaining the confidentiality of these warrants and the confidentiality of what occurs in his office. The Don Herring incident that resulted in this, again, going to Judge Wilkinson's earlier point, Mr. Herring was not served that warrant for two months after Ms. McZeek informed him that the warrant was in existence. I believe the testimony from the officer was that when he got there he found Mr. Herring under his bed. So I get around what she said there on that employee's statement. I did exactly what Officer Stevenson asked me to do, to hold and call him when Don Herring came in. I did exactly what he told me to do. So he told him. He had asked her to tell him about his warrant, to tell him to stay there. Your Honor, Officer Stevenson may have asked her to do that, but Judge Harris said that he shouldn't have done it. But the officer asked him to do it, asked her to do it. We have to take that as true. And, Your Honor, I don't believe that... Isn't that right? Yes, sir. You accept that? I'll accept that the officer may have asked that, but again, as Mr. Babb points out... He wanted her to arrest him. He said he told her to arrest him. Now, she doesn't confirm that, but he said he told her to arrest him. I think the term that the officer used was hold the... Hold somebody, you're arresting them, aren't you? And that would be an arrest in South Carolina? I believe it would be, Your Honor, but... What's your position on, or maybe you know the answer about the... What's the law of South Carolina on warrants being public or private unless they're ordered private or sealed at the time they're issued? When search warrants, we normally seal them up until they're executed. But do they have to do that in South Carolina, or is there a rule presumption one way or another, or what's the law down there? Well, Your Honor, I... Now, Judge McDowell said the practice was the other way around down there. Your Honor, when that question was posed to Mr. Babb, I do what I always do in court when the judge asks that question. I grab my iPhone to look it up, and all of a sudden I realize, no, I can't do that. I don't, sitting here today, don't know precisely what the order is. I'm fairly certain that warrants are not subject to disclosure under the Freedom of Information Act, which would lead me to believe that if I looked at the warrant statute, it would say that they are confidential. But I don't know for certain that, you know, even then, though, the expectation from Judge Harris, whether it was to be public or not, was that they be maintained confidentially. And, you know, if that would involve, even if it was subject, example to a Freedom of... The expectation from Judge Harris, you say, that's what you say it is, but here, Stevenson is the officer that got the warrant, right? Yes, sir. And he asked this lady who worked at the clerk's office, and when this fella comes in, you hold him for me. Tell him you got a warrant for him, and hold him for me. And he came in and she told him he had a warrant. There was a warrant outstanding for him, but she said she didn't have any right to hold him. And he didn't stay. Your Honor, the problem... It's what the officer asked her to do, according to what she says, which we have to accept as true. Yes, sir. And we can accept that as true. Keep in mind, this was the first incident, the one that generated the... That's what you started out talking about, and I'm reading from it here. Yes, sir, Your Honor. Right on the face of it. And Officer Stevenson, his expectations were obviously that, let me know that he's there and I'll come serve the warrant, and we'll do it here in the office. Excuse me, but does it really matter what the officer's expectations were? I really don't think it does, Your Honor. I believe that it's the judge's expectation. He was the decision-maker. Well, the employer's expectation. The personnel responsible for making decisions, employment decisions. The decision-maker in this incident was Judge Harris. There's been no contention that Judge Harris was operating in violation of South Carolina law, and that hasn't been contended either below or here. No, sir, Your Honor. I can see why somebody might want a blanket policy, and in the federal system, there are warrants, but we generally have greater staff, and when there are warrants, there are fewer of them. I would imagine a local magistrate's office in South Carolina must have a much greater volume of warrants than we do, and probably less staff to deal with them, and I would expect that some judges would do what Judge Harris did, which was to say, I want to err here on the side of confidentiality because I understand what the consequences of ill-advised disclosure are. Yes, sir, Your Honor, and even though I don't believe that the first incident involving Mr. Herring is all that important with the ultimate decision that was made, I do know that it was Officer Stevenson that actually brought the complaint against Ms. McZeek, that brought it to Judge Harris' attention, and the reason that he did so was because of a conversation that he had with the defendant two months after the defendant had been . . . after Stevenson had had the conversation with McZeek, that Ms. McZeek told me . . . Herring says that McZeek told me that we have the warrant, and he thought it had been taken care of. So, again, he was unserved for a period of two months, and the implication there could be that, again, he was evading service of the warrant. Now, going back to Your Honor's point about a number of warrants that exist, yeah, the magistrates do serve a number of warrants. They do arrest warrants. They do search warrants. They have . . . Officer Stevenson, his main duty was serving warrants. They serve court papers, notices. They have a wide variety of job duties. I mean, I think Judge King makes an entirely fair point that at the allegations with respect to Officer Stevenson is true, but of the two situations, the more troubling one is the second that occurred after the disciplinary report. That, I think, is the difficult one to understand because there may have been some confusion with respect to the first one. We take the plaintiff's version of it as correct, but as to the second one, you have the document there, and as I say, I worry about the judge's ability to run an, I won't say authority, but ability to run an office being compromised when somebody gets a disciplinary report, and then shortly thereafter violates or does the very thing that the discipline was meted out for. And that's the sticking point here. That's the thing that's hard to overcome. Your Honor, it's undisputed that Ms. McZeek was aware of the warrant. She assisted . . . You're talking about the first incident? No, the second one, the Anton Graham warrant. Let me go back to the first incident. Yes, sir. It's your position then that when Officer Stevenson, who got the warrant issued, when he asked Ms. McZeek to tell this fella about it when he came in and hold him, that she was supposed to ignore that. She wasn't supposed to cooperate with Officer Stevenson. Now, officers go around all the time executing warrants and getting cooperation from citizens and court officials and everybody. But your position here has to be she couldn't cooperate with Officer Stevenson. Your Honor, that's not my position. Well, she did exactly what Officer Stevenson asked, and you said by doing that she disclosed the existence of a warrant that was supposed to be secret. At the request of the officer, you say that by then the policy changed. There's no writing that says it changed. Judge McDowell says it was a public. Judge Harris says it's not. Stevenson gets a warrant. He asks the clerk to help him get it executed. She says, I did exactly what Officer Steven asked. But she couldn't do that because Judge Harris says it's secret. She couldn't do anything that the officer who got the warrant asked her to do. That has to be your position. Actually, your position could be that she could have said that the judge has now informed me that I am unable to respond as you would like. I believe so. And that would be my position. That she has to say, I can't cooperate with you. Well, I think that doesn't make any sense that an officer of the court, she's an officer of the court, she's the clerk, can't cooperate with the police officer. Your Honor, one thing that she did not do that Officer Stevenson asked her to do. What they wanted to do was arrest the guy or have him turn himself in at the office rather than have to go to his house. And what Officer Stevenson was trying to do was to get him to turn himself in at the office rather than have to go to his house. And he asked her to cooperate. And she says she did. She did exactly what he asked her to do. Well, she did not do exactly what he asked her to do. But she says she did. And we accept that. And you have to accept it. And you said earlier that you did accept it. I know you have to back off from it because you can't accept it because it undermines you. But she says I did exactly what he asked me to do. The point that I'd like to make was that Officer Stevenson asked her to call him when Mr. Herring came into the office to let him know that Mr. Herring was in the office. So you don't believe what she said? Well, no. She admits that. She says I did exactly what Officer Stevenson asked me to do. Which is exactly what she says. I'm reading it exactly here. With the exception of calling him. And there's evidence in the record in the Joint Appendix from her testimony that Officer Stevenson asked her to call me when Herring gets there. There might be evidence that contradicts every word she said. But that's what jury trials are about. This is summary judgment. And how do we look at it on summary judgment? We take her side. We believe what she said. And I read to you what she said. It's in black and white. I did exactly what Officer Stevenson asked me to do. If there are two versions of what Officer Stevenson said, he has a version, she has a version, we have to take her version. For this, at this stage. Now the jury might take it differently. Why don't you just assume that that's correct. That she did exactly what Officer Stevenson asked. If she did exactly what Officer Stevenson asked in the first instance. With the Herring arrest warrant. She did not do exactly what Judge Harris subsequently told her about how she would handle those matters when she was dealing with the Anton Graham matter. And it was the Anton Graham matter that was the basis of Judge Harris' decision to terminate Ms. McZeek. And as part of the Don Herring incident, Judge Harris made it known to Ms. McZeek that he was serious about maintaining the confidentiality of these warrants. It was part of the write-up, it was part of the suspension, and subsequently it was part of the termination letter that was given to her on the day that she was terminated. And I don't think that there's any dispute, there is no dispute that Judge Harris told her to maintain the confidentiality. Was there ever a, after Judge McDowell retired, he testified that things were public, and Judge Harris came in, did he ever issue any notice in writing that things have changed and now these warrants are considered secret? Well, I would consider the September 25, 2008, disciplinary report as being in writing that yes, this is... Is that the first one? Yeah, that's the one that we were just talking about. Yeah. That's the one that we were just talking about, the first one, where that's where Officer Stevenson asked her to tell the felon and that's what she did. So that, but if you believe her, that undermines your notice provision. That's the point. Well, what he tells her... What you want to say is that she didn't, her explanation on that disciplinary report is not true, that we can't believe her, we've got to believe the rest of the evidence. But you're having trouble accepting the summary judgment standard. That's my point, that's all. Just the legal point. Your Honor, I would point out, on the, in her employee statement, she makes the comment, I did exactly what Officer Stevenson asked me to do except to hold him or call him when Don Herring came in. That's what I said earlier, she said she didn't have any prior to arrest. She didn't. Hold him. Hold him and call him, which is what she didn't do and that's in the record, that's also undisputed. She never called him and had she called him, he would have been, Officer Stevenson would have been on notice that Don Herring was aware that this warrant was out there and again, the significance of the September 08 disciplinary report is that it sets out in writing that what Judge Harris' expectations were and that was that she maintained the confidentiality of these warrants. Which means she couldn't do what Officer Stevenson asked her to do. After that point, after she could not cooperate with the police officer. Well, she could cooperate to the extent that she could say, you know, as Judge Duncan suggested, this isn't how we do business anymore, we got a new sheriff in town. You're going to remember your colloquy with Judge King for a long, long time. But I do think we understand your point. You understand, your point is before you sit down, you need to reassure Judge King that you do know what the summary judgment says. I'm confident he knows it. He's a good lawyer. He's been here before. Big cases. The point you're making is that disciplinary notice it it enters the realm of where there's no genuine dispute of material facts. She was on notice of what not to do and she did it. And that's what you want to hang your hat on, but if you start quarreling with Judge King on Rule 56, that is not going to end happily. Well, I I appreciate that judgment. I noticed I had 20 minutes to talk and I had to figure out some way to use it up. No, you really didn't. But yeah, I mean, I do. I go back. It was it's straightforward. The judge told her not to do this. It's undisputed. She did it and she was terminated. Thank you. And that's what Judge Harlow ruled. Exactly. Thank you. Thank you all very much. I'm happy to give you some rebuttal time. Thank you, Your Honor. It's not clear that this Horry County disciplinary report conveyed any kind of legitimate expectations that alter or change the expectations she's operated under for 26 years. I understand that Judge Harris is a different judge, may have different expectations, and I agree with that aspect of it. But he's got to convey those and in a manner that show they're legitimately held and But my part of my difficulty is that you seem to this whole thing seems to be about Judge McDowell. And I'm just not I'm just not certain how far that that could get. And Your Honor, it's not. It's not all about Judge McDowell. And if that's the way I've presented it, I apologize. All Judge McDowell is showing and even Judge Livingston's extent is what was the expectations that were known at the time? Can I ask you just one thing about the first incident? Because there was a dispute about whether she did exactly what Stevenson had told her to do and she had done that. But did Officer Stevenson tell her to call him and get back in touch with him? And sort of apprise him of what the situation with the defendant was? That's not my understanding of exactly how the conversation went down. It was more from the record and what we've seen in the testimony. When he comes here, tell him I have a warrant. Hold him here and call me. In other words, hold him here and call me. I'll come on down. Well, she can't hold him there. She doesn't have any holding powers and she'd probably get the county in trouble if she tried to hold him there. What she says in the disciplinary report She could have called. She could have called. But I guess what I'm getting at I agree with you on the point. She could have called, Your Honor. But I guess my whole point with that was that the conversation wasn't keep me apprised of the situation and what's going on. It was hold him here and call me. From what I gather from the testimony and how they testified. I don't think it was quite in that light. As far as whether this disciplinary report is just clear on its face it's not a contract where we look at it in a vacuum of the four corners of this document. We have to look at the facts that were happening at the time. The facts are that the incident occurred prior to Judge Harris getting there so there's no way that she could have had his altered expectations conveyed prior to performing or doing the conduct described herein. And then when he talks to her about this it's about Dr. Stevenson told you to do this or this or this. She said I did what he told me to do. What is the confidential information that was divulged? What part of this did I do that I wasn't supposed to do? Because I have to interact as the clerk with the officers. I have to interact as the clerk with the public. I really don't see how. I mean you can look at these things afterwards and dissect them and everything but I'm not sure how a report gets any clearer than this. It goes right to the nature of the defense. She's on notice in dispute this particular that she's clearly on notice from the disciplinary report that disclosing the information on a general session bench warrant is off bounds and contrary to the policy. And that, you know, that point is I don't know how a judge can convey anything in more straightforward terms. There was a district court view and I don't understand why that would be incorrect. Well, Your Honor, I think as a magistrate judge pointed out in the report and recommendation that at best it conveys looking at it in like most favorable of the plaintiff and looking at it on the prima facie case and summary judgment standard that at best maybe it conveys that she's not supposed to disclose the existence of the warrant even though the officer told her to do that. You're splitting some pretty fine hairs on that one. Well, Your Honor, the whole point is that when you look at it in her position at the time that she was sitting here and the facts surrounding this, it's easy to see how it's very confusing to her as to what he's trying to say. What's the confidential information? If you had suspended for a few days you'd want to know why and you wouldn't take chances with doing something so close to the warning where the judge has said if you do this again there's going to be termination. But at any rate, sometimes we lose the overall sense of Title VII and we can debate these incidents and everything. It doesn't seem to me that man is racially oriented or racially motivated. He has a policy that obviously means a great deal to him from his 23 years experience and everything and he's trying to put it into effect and that doesn't seem to me to have a whole lot to do with race. We can disagree but it doesn't seem he's he obviously has a policy that's near and dear to his heart and he wants it to stay. At any rate, thank you very much for your
judges: J. Harvie Wilkinson III, Robert B. King, Allyson K. Duncan